FILED
U.? ??STRICT COURT
2012 SEP 12  AM 10: 12

CLER?_____ _____
S?. ??T. OF GA.

DEXTER FITZPATRICK; WILLIE
MOSLEY; KELVIN TANKERSLEY;
KENNARD SMITH; EDDIE MANN,
JR.; and ALPHEAUS PUTMON,

        Plaintiffs,

    v.

GEORGIA DEPARTMENT OF
CORRECTIONS; GEORGIA STATE
PRISON; GEORGIA HEALTH
SCIENCES UNIVERSITY, GEORGIA
CORRECTOINAL HEALTHCARE;
DONALD JARRIEL; BRUCE CHATMAN;
DR. TOMMY LEE JONES; DR. DEAN
BROOME; JOHN PAUL; JOHN DOES,
1-3; Commissioner BRIAN OWENS;
and SAM OLENS,

        Defendants.

           :
           :    CIVIL ACTION NO.: CV612–022

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

    Plaintiffs, who are or were incarcerated at Georgia State Prison in Reidsville,

Georgia, filed, through counsel, an Amended Complaint contesting certain conditions of

their confinement. Defendants filed a Motion to Dismiss Plaintiffs' First Amended

Complaint. Plaintiffs filed a Response. Defendants filed a Reply. For the reasons

which follow, Defendants' Motion should be **GRANTED** in part and **DENIED** in part.

## STATEMENT OF THE CASE

Plaintiffs contend that they became infected with tuberculosis ("TB") while housed at Georgia State Prison ("GSP"). Specifically, Plaintiff Dexter Fitzpatrick states that he was housed at GSP from June 2009 until March 16, 2010, and started experiencing symptoms of TB as early as December 2009. Plaintiffs assert that before Plaintiff Fitzpatrick was diagnosed with TB, he was housed in the same dormitory as the other Plaintiffs. Plaintiffs also assert that, as a result of Plaintiff Fitzpatrick being housed with them, the other Plaintiffs were infected with TB. Plaintiffs claim that GSP housed more inmates than it was designed to hold and it is poorly ventilated, conditions which led to an ample breeding ground for the TB bacteria. (Doc. No. 36).

Defendants contend that most of Plaintiffs' claims are barred because these claims are either unexhausted or barred by the applicable statute of limitations period. Defendants allege that Plaintiffs name parties which are not amenable to suit in federal court. Defendants also allege that Plaintiffs' state law claims are barred. Defendants further allege that Plaintiffs' claims against them in their official capacities are barred. Finally, Defendants contend that Plaintiffs are not entitled to injunctive relief.

## STANDARD OF REVIEW

Under a Rule 12(b)(6) motion to dismiss, a court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff[s]."

AO 72A
(Rev. 8/82)

Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff[s] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged.'" Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice. Ashcroft, 556 U.S. at 678.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that [ ] defendant[s have] acted unlawfully. Where a complaint pleads facts that are merely consistent with [ ] defendant[s'] liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal punctuation and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id.

## DISCUSSION AND CITATION TO AUTHORITY

I.      **Exhaustion**[1]

Defendants assert that the grievance procedure to be used by inmates is set forth in a Standard Operating Procedure ("SOP"). Defendants also assert that each

---

[1] Defendants omit any discussion of Plaintiff Alpheaus Putmon's utilization of the prison grievance procedure. The undersigned assumes that Plaintiff Putmon exhausted his available administrative remedies.

AO 72A
(Rev. 8/82)

inmate receives an oral explanation of the grievance process and a copy of the written instructions about this process upon entry into the Georgia Department of Corrections.

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. (internal punctuation and citation omitted). A judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id.

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). 42 U.S.C. § 1997e(a) states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523. The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

AO 72A
(Rev. 8/82)

In _Turner v. Burnside_, 541 F.3d 1097 (11th Cir. 2008), the Eleventh Circuit clarified how the lower courts are to examine the issue of exhaustion of administrative remedies. First, the court is to take the plaintiffs' version of the facts regarding exhaustion as true. _Id._ at 1082. If, even under the plaintiffs' version of the facts, plaintiffs have not exhausted, the complaint must be dismissed. _Id._ However, if the parties' conflicting facts leave a dispute as to whether plaintiffs have exhausted, the court need not accept all of plaintiffs' facts as true. _Id._ Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" _Id._ "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner[s have] exhausted his available administrative remedies." _Id._ at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. _See_ _Bryant_, 530 F.3d at 1376-77.

In support of their position that all Plaintiffs except Plaintiff Putmon failed to exhaust their administrative remedies, Defendants submitted a copy of SOP IIB05-0001, which is the Statewide Grievance Procedure applicable to penal institutions under the operation of the Georgia Department of Corrections. (Doc. No. 45-2, pp. 16-28). Within the Georgia Department of Corrections, the grievance procedure is a three-step process. _Blackerby v. McNeil_, No. CV307-071, 2008 WL 5209975, at *4 (S.D. Ga. Oct. 7, 2008). It commences with the filing of an informal grievance which must be filed within ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance." _Id._ If an inmate is unsatisfied with the resolution of

AO 72A
(Rev. 8/82)

his informal grievance, a formal grievance form must be submitted within five business days. Id. The Warden has thirty calendar days to respond to the formal grievance. Id. If the inmate is not satisfied with the Warden's response, he has five business days to file an appeal; then, the Office of the Commissioner has ninety calendar days to respond. Id. The grievance procedure is terminated upon the issuance of an appeal response. Id. Inmates can grieve about "[a]ny condition, policy, procedure, action or lack thereof that affects inmates and is in the control of the Department of Corrections." (Doc. No. 45-2, p. 18). The procedure requires that a "complaint on the Informal Grievance Form must be a single issue/incident[,]" and Informal Grievances with additional pages will be rejected. (Id. at p. 19). Any grievance filed out of time or containing more than one issue will be rejected. (Id. at p. 22). In addition, inmates can file a grievance concerning conditions at one institution though housed at another. (Id. at p. 26). Time limitations can be waived for good cause. (Id. at 22, 24).

### A.    Dexter Fitzpatrick

Defendants contend that Plaintiff Fitzpatrick filed Informal Grievance Number 98332 on September 15, 2011, and complained that he had been denied medical treatment for TB while he was housed at GSP. Defendants assert this informal grievance was denied as being untimely filed, which is insufficient for exhaustion purposes.

Plaintiff Fitzpatrick asserts that he properly exhausted the administrative remedies which were available to him. Plaintiff Fitzpatrick alleges that, upon his transfer to Augusta State Medical Prison ("ASMP"), he was held in isolation for three (3) months and had no real opportunity to file a grievance. Plaintiff Fitzpatrick also alleges that his

AO 72A
(Rev. 8/82)

transfer to another institution removed the exhaustion requirements. Plaintiff Fitzpatrick avers that he had no reason to know that he could have filed a grievance regarding conditions at GSP after he was transferred to ASMP, and, even if he did, any such grievance would have been filed more than the ten (10) calendar day time period allowed under the SOP.

Plaintiff Fitzpatrick filed Informal Grievance Number 98332 on September 15, 2011, while he was housed at ASMP. In this Informal Grievance, Plaintiff Fitzpatrick stated that he was denied medical treatment on March 16, 2010, after he was diagnosed with TB. This Informal Grievance was rejected as being filed out of time, per policy. (Doc. No. 45-2, p. 30). Plaintiff Fitzpatrick filed Informal Grievance Number 48710 on April 22, 2010, and, though the copy is not entirely legible, it appears that the grievance concerned the denial of property. (Doc. No. 45-4, p. 2).

Plaintiff Fitzpatrick did not properly exhaust his administrative remedies prior to the filing of this cause of action. Plaintiff Fitzpatrick filed an informal grievance about being denied medical treatment for his TB while he was housed at GSP. This action belies his contention that he had no reason to know he could have filed a grievance concerning GSP after her was transferred to ASMP. However, this informal grievance was untimely filed, as Plaintiff Fitzpatrick complained about events which occurred more than a year prior to the date of his informal grievance. Plaintiff Fitzpatrick did not refile this informal grievance, appeal the rejection of this informal grievance, or make a showing that the time requirements should be waived for him, based on good cause or

AO 72A
(Rev. 8/82)

for any other reason. This portion of Defendants' Motion should be granted. Plaintiff Fitzpatrick's claims against all Defendants should be dismissed, without prejudice.[2]

## B. Willie Mosley

Defendants assert that Plaintiff Mosley filed Informal Grievance 46939 and complained he was exposed to TB. Defendants also assert that Plaintiff Mosley's complaint was not resolved, and he filed a formal grievance. The warden denied Plaintiff Mosley's grievance, but he did not file an appeal. Defendants contend that Plaintiff Mosley did not exhaust his administrative remedies, and he cannot claim the grievance procedure was not available to him because unspecified staff would not give him an appeal form. Defendants assert that Plaintiff Mosley filed another informal grievance after he was transferred to ASMP and contended he was exposed to TB while he was housed at GSP. This informal grievance was denied as being untimely filed.

Plaintiff Mosley contends that he requested an appeal form, yet he was not provided with this form. Plaintiff Mosley thus maintains that he exhausted the administrative remedies which were available to him.

Plaintiff Mosley appears to have exhausted his available administrative remedies. Plaintiff Mosley filed Informal Grievance Number 46939 on April 8, 2010, which was within ten (10) days of being informed that he was exposed to TB, and sought medical attention. (Doc. No. 45-2, p. 32). Plaintiff Mosley was informed that the investigation at

---

[2] Defendants raise a statute of limitations defense as to Plaintiff Fitzpatrick only. (Doc. No. 45-1, pp. 12-13). Given the undersigned's recommended disposition of Plaintiff Fitzpatrick's claims, it is unnecessary to address this portion of Defendants' Motion. The undersigned notes Defendants' assertion in their Reply that all Plaintiffs allege that they were aware of Plaintiff Fitzpatrick's symptoms before March 14, 2010, and that any claims accruing before that date are barred by the applicable statute of limitations. The undersigned does not share Defendants' view.

GSP was in progress; this did not resolve his informal grievance. Plaintiff Mosley then filed Formal Grievance Number 46939, which was denied. (Id. at pp. 33-34). There is no evidence that Plaintiff Mosley filed an appeal with the Commissioner's Office. However, according to Plaintiff Mosley, he asked for an appeal form and was not given one. It is of no moment that Plaintiff Mosley cannot determine who denied his request for an appeal. The facts before the Court are that he asked for an appeal form and was not provided with one. Thus, Plaintiff Mosley exhausted his available administrative remedies. This portion of Defendants' Motion should be denied.

### C.  Kelvin Tankersley

Defendants allege that Plaintiff Tankersley filed Informal Grievance Number 114196 on March 13, 2012, and stated that he contracted TB at GSP and was provided with inadequate medical treatment. Defendants state that Plaintiff Tankersley's informal grievance was rejected because he did not follow the procedure requiring grievance complaints being contained within the provided space. Defendants assert that Plaintiff Tankersley filed Informal Grievance 114835 and asserted the same complaint as he did in Informal Grievance 114196. This later filed informal grievance was rejected as untimely.

Plaintiff Tankersley filed Informal Grievance Number 114196, which was rejected because he failed to write in the provided space.[3]  Plaintiff Tankersley then filed Informal Grievance Number 114835. This Informal Grievance was rejected as being untimely.  (Doc. No. 45-2, pp. 39, 41).  Plaintiff Tankersley did not file a formal grievance after his informal grievances were rejected.  There is nothing of record which

---

[3] Failing to write only in the provided space is not a listed reason for rejecting a grievance. (See Doc. No. 45-2, pp. 19, 28).  However, there is no evidence before the Court that a grievance rejected for an improper reason cannot be refilled, which is what Plaintiff Tankersley did.

AO 72A
(Rev. 8/82)

indicates Plaintiff Tankersley exhausted his available administrative remedies prior to the filing of this cause of action. This portion of Defendants' Motion should be granted. Plaintiff Tankersley's claims should be dismissed without prejudice.

### D. Kennard Smith

Defendants contend that Plaintiff Smith exhausted his claim that he was exposed to active TB, but he failed to exhaust his claim that he did not receive adequate medical treatment. Defendants also contend that Plaintiff Smith's Grievance Number 48026 did not alert prison officials to any potential problems regarding the sufficiency of Plaintiff's medical treatment. According to Defendants, prison officials responded to Plaintiff Smith's grievance by discussing isolation procedures, not medical issues. Defendants aver that Plaintiff Smith later filed Informal Grievance Number 77087 on February 1, 2011, and stated that he was not receiving proper medical treatment. Defendants also aver that Plaintiff Smith failed to file an appeal on this grievance after the warden denied Plaintiff Smith's request.

Plaintiff Smith contends that he properly exhausted his administrative remedies. Plaintiff Smith states that Informal Grievance Number 48026 was necessarily medical in nature, as he described the failure to address a serious medical and health issue properly—the spread of a contagious disease. Plaintiff Smith alleges that Defendant Jarriel included an attachment to his response to Plaintiff Smith's formal grievance which explained the medical implications of contact with a TB contaminant and the medically necessary steps that are taken to diagnose and treat TB. Plaintiff Smith also alleges that any argument from Defendants that Plaintiff Smith did not exhaust his administrative remedies concerning inadequate medical treatment is unsupported.

AO 72A
(Rev. 8/82)

Plaintiff Smith filed Informal Grievance Number 48026 on April 19, 2010, and alleged that he had been exposed to active TB. Plaintiff Smith sought compensation for this exposure to a deadly disease which resulted from the failure to isolate another prisoner, who was known to have active TB. (Doc. No. 45-2, p. 44). Plaintiff Smith filed a formal grievance, and, after his formal grievance was denied, he filed an appeal with the Commissioner's Office. (Id. at pp. 45-47). Plaintiff Smith also filed Informal Grievance Number 77087 on February 1, 2011, and complained about medical staff's refusal to order testing to determine what his medical issues were. Plaintiff Smith filed a formal grievance but failed to file an appeal after his formal grievance was denied. (Id. at pp. 50-51).

Plaintiff Smith exhausted his administrative remedies numbered 48026, which concerned his exposure to TB and thus, his conditions of confinement claim. Plaintiff Smith's grievance numbered 48026 did not put Defendants on notice that Plaintiff Smith had concerns about his medical treatment. Rather, Plaintiff Smith made it clear in his appeal that the warden's response did not address the issues he set forth in his formal grievance—"the procedures that occurred, or lack thereof, before Dexter Fitzpatrick was identified as an active case of TB; thus, resulting in my being carelessly exposed to TB. . . . It is my contention that timely, and sound, medical and/or security procedures would have averted my undue exposure to Mr. Fitzpatrick." (Doc. No. 45-2, p. 47). The only medical issues raised in remedies numbered 48026 are those concerning Plaintiff Fitzpatrick.

In contrast, Plaintiff Smith failed to file an appeal for administrative remedies numbered 77087, which concerned his medical treatment. Accordingly, Plaintiff Smith

AO 72A
(Rev. 8/82)

did not exhaust his available administrative remedies regarding his medical treatment. This portion of Defendants' Motion should be granted, and Plaintiff Smith's deliberate indifference to a serious medical need claim should be dismissed without prejudice.

### E.    Eddie Mann

Defendants allege that Plaintiff Mann filed Informal Grievance Number 48027, complaining that he was exposed to active TB, on April 20, 2011.  Defendants also allege that Plaintiff Mann properly exhausted this grievance, yet, like Plaintiff Smith, he did not complain about inadequate medical treatment.  Defendants assert that Plaintiff Mann filed Informal Grievance Number 107024, and he again complained about being exposed to TB; however, Defendants contend, Plaintiff Mann did not allege he was denied medical treatment.

Plaintiff Mann asserts that, like Plaintiff Smith's, his grievance was necessarily medical in nature, as he described the failure of prison staff to address and respond in a proper manner to a serious medical and health issue.  Plaintiff Mann states that he mentioned the medical staff's failure to diagnose properly his exposure to TB.

As there is no dispute between the parties that Plaintiff Mann exhausted his administrative remedies regarding his conditions of confinement claim (i.e., that he was exposed to TB), the undersigned accepts that Plaintiff Mann exhausted his available administrative remedies as to this claim.

However, there is no evidence that Plaintiff exhausted his administrative remedies concerning his deliberate indifference to a serious medical need claim. Plaintiff Mann filed Informal Grievance Number 107024 on December 29, 2011, and he stated that he was placed on a medication because he was exposed to a fatal disease.

AO 72A
(Rev. 8/82)

Plaintiff Mann also stated that his grievance was for "medical's failure to properly diagnose this exposure." (Doc. No. 45-2, p. 53). This Informal Grievance was rejected because it was filed out of time and because Plaintiff Mann had already grieved about the same issue in Number 48027. There is no evidence Plaintiff Mann sought a good cause exception to waive the time limits or otherwise followed this Informal Grievance through the other two (2) steps in the administrative remedies procedure. In addition, Plaintiff Mann did not claim that he was denied medical treatment or that Defendants were deliberately indifferent to his serious medical needs. Instead, Plaintiff Mann complained about being negligently exposed to TB, which concerns the conditions of his confinement. This portion of Defendants' Motion should be granted, and Plaintiff Mann's deliberate indifference to a serious medical need claims should be dismissed without prejudice.

## II. Claims Against "Entity" Defendants and Against Individual Defendants in Their Official Capacities

Defendants aver that the capacity to sue or to be sued is determined by state law. Defendants maintain that, under Georgia law, the Georgia Department of Corrections ("GDOC"), Georgia Health Sciences University ("GHSU"), and the Georgia Correctional Healthcare ("GCHC") are not capable of being sued and should be dismissed. Defendants assert that GSP is a building and, as such, is not a legal entity capable of being sued. Defendants also assert that the GHSU is a division of the Medical College of Georgia, which is governed by the Board of Regents of the University System of Georgia. Defendants further assert that GHSU and GCHC do not

13

have the power to sue or to be sued and should be dismissed. Plaintiffs assert that their claims are not barred by Eleventh Amendment immunity.

"[T]he capacity to be sued is 'determined by the law of the state in which the district court is held.'" Lawal v. Fowler, 196 F. App'x 765, 768 (11th Cir. 2006). Thus, because this Court sits in the Southern District of Georgia, Georgia law controls in this case. Id. (citing FED. R. CIV. P. 17(b)). "The Georgia Supreme Court has explained that 'in every suit there must be a legal entity as the real plaintiff and the real defendant. [Georgia] recognizes only three classes as legal entities, namely: (1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue.'" Id. (quoting Ga. Insurers Insolvency Pool v. Elbert Cnty., 258 Ga. 317, 368 S.E.2d 500, 502 (1988)).

In addition, a State's "Department of Corrections is not amenable to suit [under § 1983] because it has immunity under the Eleventh Amendment." Leonard v. Dep't of Corr. Fla., 232 F. App'x 892, 894 (11th Cir. 2007) (citing Stevens v. Gay, 864 F.2d 113, 115 (11th Cir. 1989)). Further, a lawsuit against prison officials in their official capacities is no different from a suit against the government itself; such defendants are immune. Smith v. Fla. Dep't of Corr., 318 F. App'x 726, 728 (11th Cir. 2008) (citing Powell v. Barrett, 496 F.3d 1288, 1308 & n.27 (11th Cir. 2007)).

Plaintiffs' claims against the Georgia Department of Corrections are barred by the Eleventh Amendment. Plaintiffs' monetary damages claims for alleged constitutional violations against the individually named Defendants in their official capacities would be claims against the State of Georgia and are barred. Finally, Plaintiffs' claims against GSP, GHSU, and GCHC should be dismissed, as these

AO 72A
(Rev. 8/82)

entities are not parties subject to suit under Georgia law. These portions of Defendants' Motion should be granted.

## III.    John Doe Defendants

Defendants contend that the John Doe Defendants are improper parties. According to Defendants, fictitious party pleading is not permitted in federal court unless the description of the defendant is so specific as to be surplusage. Defendants assert that Plaintiffs fail to provide a description of any of the John Doe Defendants in their Amended Complaint, and, accordingly, John Does 1-3 should be dismissed.

Plaintiffs allege that Georgia law allows parties to use fictitious names in notice pleadings. Plaintiffs also allege that Georgia law provides that a complainant may designate a party whose name is not known by name and later amend pleadings once the party's name is determined. Plaintiffs recognize that federal courts generally do not allow fictitious party pleadings, but these courts will permit the use of fictitious names if the plaintiff can discover the name of a defendant only through discovery.

"As a general matter, fictitious-party pleading is not permitted in federal court." Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010). A limited exception to this rule exists "when the plaintiff's description of the defendant is so specific as to be at the very worst, surplusage." Id. However, fictitious-party pleadings may be allowed in cases where it is clear that discovery would uncover the unnamed defendant's identity. Daleo v. Polk Cnty. Sheriff, No. 8:11-CV-2521-T-30TBM, 2012 WL 1805501, at *4-5

AO 72A
(Rev. 8/82)

(M.D. Fla. May 17, 2012) (citing <u>Dean v. Barber</u>, 951 F.2d 1210, 1215-16 (11th Cir. 1992)).

Here, it is not clear discovery would lead to Plaintiffs being able to identify Defendants John Does 1-3. Defendants John Does 1-3 are described in the Amended Complaint as former employees of the GDOC or GCHC who were responsible for the provision of adequate medical care. (Doc. No. 36, ¶ 16). These three (3) Defendants could be any of several hundreds of people. To allow Plaintiffs the opportunity to attempt to identify these three (3) individuals does not equate to the real possibility that these unknown individuals' identities will be revealed. This portion of Defendants' Motion should be granted, and Plaintiffs' claims against Defendants John Does 1-3 should be dismissed.

## IV. State Law Claims

"[T]he Eleventh Amendment does not protect state employees sued in their individual capacity for employment-related acts." <u>Jackson v. Ga. Dep't of Transp.</u>, 16 F.3d 1573, 1575 (11th Cir. 1994) (citations omitted). However, under the Georgia Tort Claims Act, "[a] state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." O.C.G.A. § 50-21-25(a). This is because a plaintiff "must name as a party defendant only the state government entity for which the state officer or employee was acting and shall not name the state officer or employee individually." O.C.G.A. § 50-21-25(b).

AO 72A
(Rev. 8/82)

State officers or employees acting within the scope of their official duties or employment are immune from personal liability under O.C.G.A. § 50-21-25(a) even when the actions of which they are accused constitute unauthorized torts that are intentional or malicious. See Ridley v. Johns, 274 Ga. 241, 242, 552 S.E.2d 853, 855 (2001); Tootle v. Cartee, 280 Ga. App. 428, 431, 634 S.E.2d 90, 93 (2006) (recognizing that immunity under the GTCA "has been construed broadly to include unauthorized tortious acts that occur during the time the officer or employee is engaged in performance of his official duties") (internal quotation marks and citations omitted); Davis v. Standifer, 275 Ga. App. 769, 772, 621 S.E.2d 852, 855 (2005) (holding that a Georgia State Patrol officer could not be sued individually in tort for allegedly sexually assaulting a woman during a traffic stop because "intentional wrongful conduct comes within and remains within the scope of employment" when the state employee acts within the scope of his official duties) (citations omitted); Hardin v. Phillips, 249 Ga. App. 541, 544, 574 S.E.2d 565, 568 (2001) ("[B]oth the provisions of the [GTCA] and the case law interpreting it demonstrate that the Act provides immunity from liability for torts committed during a state employee's performance of official duties without regard to intent or malice.") (alterations in original) (citation omitted); Mattox v. Bailey, 221 Ga. App. 546, 546, 472 S.E.2d 130, 130–31 (1996) (holding that under the GTCA an officer at a state correctional facility was entitled to state tort immunity from a claim that he had battered an inmate by slamming the inmate's head into a door and beating the inmate while escorting him across prison grounds).

The GTCA contemplates substituting the state government entity employer as a defendant when its state officers or employees have been improperly named as an

individual for an act or omission for which the state is liable. O.C.G.A. § 50-21-25(b). However, substituting the Georgia Department of Corrections for the individually named Defendants in their individual capacities would be futile in this case. As previously stated, the GTCA provides a limited waiver of the State's sovereign immunity for actions alleging torts committed by state officers or employees; however, it does not waive the State's sovereign immunity for tort actions brought against the State in federal court. O.C.G.A. § 50-21-23(b). As a result, the Georgia Department of Corrections, if substituted for the individually named Defendants in their official capacities, would also be immune in this lawsuit.[4]

## V.     Deliberate Indifference Claims[5]

Defendants allege that Plaintiffs supplemented their original Complaint, not to add facts supporting their conclusory allegations, but by adding additional conclusory allegations. Defendants assert that Plaintiffs' allegations that they "knew something" or acted with deliberate indifference are unsupported by any well-pleaded facts. (Doc. No. 45-1, p. 17). Defendants also assert that, even assuming Plaintiffs have shown they had objectively serious medical needs, Plaintiffs fail to make sufficient allegations which show that any Defendant acted with deliberate indifference. Defendants assert that

---

[4] If Plaintiffs wish to pursue state law tort claims against the Georgia Department of Corrections for alleged torts arising from the allegations stated in their Amended Complaint, they should do so in a separate action brought in the courts of the State of Georgia. See O.C.G.A. §§ 50-21-25(b) and 50-21-23(b). Though Defendants aver that the GTCA bars Plaintiffs' state law claims, even in state court, the undersigned offers no opinion on this averment.

[5] The undersigned's recommended disposition of Defendants' Motion on exhaustion grounds leads to the limitations of Plaintiffs' deliberate indifference to serious medical needs claims to Plaintiffs Mosley and Putman and Plaintiffs' deliberate indifference to conditions of confinement claims to Plaintiffs Mosley, Putman, Smith, and Mann.

AO 72A
(Rev. 8/82)

there is nothing in the Amended Complaint which supports Plaintiffs' allegations that they were denied medical treatment, they had delays in receiving medical treatment, or that any alleged delays in treatment impacted their conditions.

Plaintiffs respond that they provided dates of incarceration, the approximate dates of the progression of the TB infections, and allegations of unanswered requests for medical intervention, contamination control, and conditions of confinement. Plaintiffs contend that the Amended Complaint sets forth the identity of the inmate who contracted TB (Plaintiff Fitzpatrick), a clear factual account of how the other Plaintiffs learned of Plaintiff Fitzpatrick's infection, and the exposure and ultimate infections due to Defendants' failure to segregate and treat the Plaintiffs' disease.

## A.  Medical Needs

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon a prison official to take reasonable measures to guarantee the safety of inmates.  The standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994).  However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105).  Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

AO 72A
(Rev. 8/82)

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327.

"The meaning of 'more than gross negligence' is not self-evident[.]" Goebert, 510 F.3d at 1327. In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the factors considered are: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Id.

In their Amended Complaint, Plaintiffs contend that Plaintiffs Mosley and Putmon exhibited symptoms of TB, much like Plaintiff Fitzpatrick did.[6] Plaintiffs also contend that each Defendant individually and Defendants collectively allowed Plaintiffs Mosley's

---

[6] Plaintiffs assert that Plaintiff Fitzpatrick displayed obvious signs of a serious medical need, including "patently observable fatigue", significant weight loss, loss of appetite, coughing, and the spitting up of blood and sputum. (Doc. No. 36, ¶¶ 44-45).

AO 72A
(Rev. 8/82)

and Putmon's treatment for the exhibited symptoms to be delayed. Plaintiffs further contend that Plaintiffs Mosley and Putmon continue to suffer the "resultant medical consequences[ ]" due to their prolonged exposures to TB. Plaintiffs assert that Plaintiff Mosley has had to have three (3) surgeries to remove fluid from his lungs and a bronchial biopsy. (Doc. No. 36, ¶¶ 66-69).

Plaintiffs' allegations of deliberate indifference to a serious medical need offer more than formulaic conclusions and are more than bare assertions. Plaintiffs' Amended Complaint sets forth enough factual detail so that Plaintiffs Mosley's and Putmon's deliberate indifference to a serious medical need claims against Defendants survive the Motion to Dismiss. This portion of Defendants' Motion should be denied.[7]

**B.    Conditions of Confinement**

The Eighth Amendment "forbids punishments that are cruel and unusual in light of contemporary standards of decency." Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862, 865 (11th Cir. 2008) (citing U.S. CONST. amend. VIII). "Accordingly, the Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive in prison." Id. (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). In order to state an Eighth Amendment conditions of confinement claim under section 1983, a "prisoner must allege facts to satisfy both an objective and subjective inquiry regarding a prison official's conduct." Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (citing Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)). "Under the objective component, a prisoner must allege a prison condition that is so extreme that it poses an unreasonable risk of serious damage to the prisoner's health or

---

[7] To the extent Plaintiffs contend Defendants violated duties owed under state law, these claims should be dismissed, per Section IV of this Report.

AO 72A
(Rev. 8/82)

safety. To satisfy the subjective component, the prisoner must allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." Id. "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Id.

Plaintiffs assert that Plaintiff Fitzpatrick exhibited symptoms of TB, which the individual Defendants knew through actual knowledge of these symptoms or because his medical needs were obvious. However, Plaintiffs contend, Defendants allowed Plaintiff Fitzpatrick to remain housed in the same dormitory as Plaintiffs Smith, Mann, Mosley, and Putmon. Plaintiffs assert that they and other inmates at GSP congregated in the common areas and had their meals in the common dining area. Plaintiffs allege that being in close proximity to Plaintiff Fitzpatrick and other inmates made the exposure to TB more likely than if inmates had been isolated in some way. Plaintiffs also allege that the inmates in Plaintiff Fitzpatrick's dorm complained to prison personnel that Plaintiff Fitzpatrick may have been dying, yet he was not receiving medical treatment. Plaintiffs assert that they were housed in a poorly ventilated facility which contained double the number of inmates GSP was designed to accommodate. Plaintiffs aver that these conditions provided an ample breeding ground for the TB bacteria. Plaintiffs also aver that Defendants, particularly Defendants Jarriel, Chatman, Paul, and Broome, were well aware of these conditions and the hazards they posed, yet these Defendants deliberately ignored these conditions. (Doc. No. 36, ¶¶ 36-41, 46, 49-53).

AO 72A
(Rev. 8/82)

Plaintiffs' Amended Complaint sets forth facts sufficient for the conditions of confinement claims of Plaintiffs Smith, Mann, Mosley, and Putmon to survive. This portion of Defendants' Motion should be denied.

## VI. Respondeat Superior

Defendants maintain that Plaintiffs make conclusory allegations that Defendants failed to train correctional officers and to implement (or require adherence to) policies and were responsible for a custom and policy of failing to provide medical care to inmates. Because these allegations are conclusory, Defendants contend, Plaintiffs cannot sustain a cause of action based on respondeat superior principles.

Plaintiffs assert that their symptoms were not one-time occurrences to which they sought isolated intervention and medical attention. Plaintiffs contend that Defendants were aware of their situation because Plaintiffs made repeated requests for medical attention and filed grievances concerning exposure to and contraction of TB, and yet, Defendants required Plaintiffs to remain in general population under crowded conditions with little to no air circulation. Plaintiffs also contend that Defendants Jarriel, Chatman, Jones, Broome, and Paul knew of Plaintiff Fitzpatrick's active TB because documents had to be processed for his transfer. Plaintiffs further contend that these Defendants failed to direct their subordinates to take any correction measures to prevent further contamination.

In section 1983 actions, liability must be based on something more than a theory of respondeat superior. Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy

AO 72A
(Rev. 8/82)

v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, No. 11-10104, 2011 WL 3585815, at *8 (11th Cir. Aug. 16, 2011). A "causal connection" may be established when the supervisor is well aware of a "history of widespread abuse" and fails to correct the alleged violations. Bryant, 575 F.3d at 1299. Constitutional "deprivations that constitute widespread abuse sufficient to notify the supervis[or] must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." Id. at 1299-1300.

Plaintiffs set forth enough facts in their Amended Complaint which reveal that they do not seek to hold the individual Defendants liable based on their supervisory positions. Rather, Plaintiffs' allegations reveal their contentions that the individual Defendants knew of their serious medical needs and the conditions of their confinement and ignored these events. This portion of Defendants' Motion should be denied.

AO 72A
(Rev. 8/82)

## VII.    Qualified Immunity

Defendants allege that they were acting within their discretionary authorities as employees of the GDOC. Defendants also allege that the Amended Complaint fails to establish any violation of a constitutional right, and, even if it did, the law was not clearly established. Defendants assert that there is nothing which would have put them on notice that any particular conduct was unlawful. Defendants assert that there are no non-conclusory allegations which show that any specific Defendant was aware that Plaintiff Fitzpatrick had TB, that any other inmate was at risk for exposure of TB, that any medical needs were being ignored, or that any of them drew the inference that Plaintiffs' constitutional rights were being violated.

Plaintiffs do not dispute that Defendants were performing discretionary functions. However, Plaintiffs assert, Defendants has actual knowledge of Plaintiff Fitzpatrick's symptoms and that he had serious medical needs which were ignored.

Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities, so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1232 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). Government officials must first prove that they were acting within their discretionary authority. Id. at 1233; Ray v. Foltz, 370 F.3d 1079, 1081-82 (11th Cir. 2004). "A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this

AO 72A
(Rev. 8/82)

authority." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1185 n. 17 (11th Cir.1994). Once the government official has shown he was acting within his discretionary authority, the burden shifts to the Plaintiff to show that the Defendant is not entitled to qualified immunity. The Supreme Court has established a two-part test to determine the applicability of qualified immunity: the court must determine whether plaintiff's allegations, if true, establish a constitutional violation, and whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001)[8]; Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).

Plaintiffs' remaining claims, if true, establish violations of their Eighth Amendment rights. These rights, as applied to the allegations asserted in the Amended Complaint, are clearly established. Though the undersigned has recommended that Plaintiff Fitzpatrick's claims be dismissed based on his failure to exhaust his administrative remedies, the remaining claims of the remaining Plaintiffs necessarily stem from Plaintiff Fitzpatrick's claims. This portion of Defendants' Motion should be denied.


## VIII. Injunctive Relief


Finally, Defendants assert that Plaintiffs are not entitled to injunctive relief. Defendants contend that Plaintiffs fail to specify any particular relief, and the general requests for changes to GSP policy would correct any alleged violations of the Plaintiffs' constitutional rights.

---

[8] In Pearson v. Callahan, 555 U.S. 223, 236 (2009), the Supreme Court held that courts can exercise discretion in deciding which of the two Saucier prongs should be addressed first in light of the particular case at hand.

26

Plaintiff Mann asserts that he is entitled to injunctive relief because he is still housed at GSP. Plaintiff Mann asserts that he is entitled to protection from the ongoing and repeated exposure to TB infected inmates.

> Prospective relief[9] in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A). To be entitled to an injunction, the movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) an injunction or protective order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunction or protective order would inflict on the non-movant; and (4) the injunction or protective order would not be adverse to the public interest. Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005). In this Circuit, an "injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites." Horton v. City of St. Augustine, Fla., 272 F.3d 1318, 1326 (11th Cir. 2001).

Plaintiffs have not met their burden of showing they will ultimately succeed on the merits of their remaining claims for relief. Though the undersigned recognizes his recommendations that Plaintiffs' Amended Complaint survives Defendants' Motion to Dismiss as to most of their asserted Eighth Amendment violations, this is not to say that

---

[9] "Prospective relief" "means all relief other than compensatory monetary damages[.]" 18 U.S.C. § 3626(g)(8).

AO 72A
(Rev. 8/82)

Plaintiffs' claims will ultimately prevail. In addition, it does not appear that Plaintiff Mann's request for injunctive relief is drawn narrowly or that it is the least restrictive means. This portion of Defendants' Motion should be granted, and Plaintiff Mann's request for injunctive relief should be dismissed.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion to Dismiss be **GRANTED** in part and **DENIED** in part. Plaintiffs Fitzpatrick's and Tankersley's claims should be **DISMISSED**, without prejudice, based on their failure to exhaust their administrative remedies. Plaintiffs Smith's and Mann's deliberate indifference to serious medical needs claims should be **DISMISSED**, without prejudice, based on the failure to exhaust their administrative remedies. Defendants GDOC, GHSU, GSP, GCHC, and John Does 1-3 should be **DISMISSED**. Plaintiffs' claims against the individual Defendants in their official capacities and Plaintiffs' state law claims should be **DISMISSED**. Plaintiffs' request for injunctive relief should be **DISMISSED**.

**SO REPORTED** and **RECOMMENDED**, this _12th_ day of September, 2012.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)